PATTI A. GOLDMAN (WSBA # 24426)
*[Pro Hac Vice Admission Pending]*
ASHLEY N. BENNETT (DCBA# 1044215)
*[Pro Hac Vice Admission Pending]*
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
Ph: (206) 343-7340 | Fax: (206) 343-1526
pgoldman@earthjustice.org
abennett@earthjustice.org

MONEEN S. NASMITH (NYSBA# 442704)
*[Pro Hac Vice Admission Pending]*
Earthjustice
48 Wall St., Floor 19
New York, NY 10005
Ph: (212) 845-7376
mnasmith@earthjustice.org

STACEY P. GEIS (CSBA# 181444)
Earthjustice
50 California, Suite 500
San Francisco, CA  94111
Ph: (415) 217-2000 | Fax: (415) 217-2040
sgeis@earthjustice.org

*Attorneys for Plaintiffs Sierra Club and
A Community Voice-Louisiana*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SIERRA CLUB, and A COMMUNITY VOICE-LOUISIANA<br><br>                    Plaintiffs,<br><br>        v.<br><br>SCOTT PRUITT, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>               Defendant. | Civ. No. _____<br><br>**COMPLAINT FOR DECLARATORY AND VACATUR RELIEF** |

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                    - 1 -

*Earthjustice
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

1.      This action concerns two rules recently promulgated by the Environmental Protection Agency ("EPA") implementing the Formaldehyde Standards in Composite Wood Products Act.  15 U.S.C. § 2697 (the "Formaldehyde Act," codified as Title VI of the Toxics Substances Control Act ("TSCA")).  The first rule established emission standards for formaldehyde in composite wood products and associated testing and compliance mechanisms. 81 Fed. Reg. 89674 (Dec. 12, 2016) (the "Formaldehyde Rule").  EPA signed this rule in July 2016 and published it in the Federal Register on December 12, 2016.  The second rule extended the Formaldehyde Rule's compliance dates so that the first compliance deadline is December 12, 2018, one year later than the December 12, 2017 deadline in the Formaldehyde Rule and more than three years after the Formaldehyde Act directed EPA to require compliance.  82 Fed. Reg. 44533 (Sept. 25, 2017) (the "Formaldehyde Delay Rule").

2.      The Formaldehyde Delay Rule violates and exceeds EPA's statutory authority.  In 2010, Congress enacted the Formaldehyde Act directing EPA to promulgate a rule setting emission standards for formaldehyde in composite wood products and associated testing and certification procedures.  15 U.S.C. § 2697.  Congress limited EPA's discretion by prescribing and establishing mandatory deadlines for the core emission standards.  EPA had until January 1, 2013 to promulgate the emissions standards and 180 days after the rule's promulgation to require compliance for three types of wood products.  By extending the compliance deadlines for these wood products far beyond 180 days of promulgation of the Formaldehyde Rule and years after the congressional 2013 deadline, the Formaldehyde Delay Rule is in blatant violation of 15 U.S.C. § 2697(b)(1), exceeds EPA's statutory authority, and is unlawful.

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                    - 2 -

3.      EPA also acted arbitrarily, capriciously, and contrary to 15 U.S.C. § 2697(b)(1) in extending the compliance deadlines for three types of wood products until December 12, 2018. EPA never addressed the statutory compliance deadlines.  It sought to reduce inconvenience to the regulated entities and downplayed the adverse health effects of delaying compliance when Congress made protecting public health paramount.  EPA acted in blatant disregard of the Formaldehyde Act, Congress's intent to put the standards in place expeditiously in order to protect public health, and EPA's findings in the formaldehyde rulemaking that requiring expeditious compliance has substantial health benefits and will protect children from disproportionate harm from formaldehyde exposures.

4.      Plaintiffs seek an order declaring the Formaldehyde Delay Rule contrary to, and in excess of EPA's authority under the Formaldehyde Act, 15 U.S.C. § 2697(b)(1), and an order vacating and setting aside the Formaldehyde Delay Rule's extension of the December 12, 2017 compliance deadlines for one year.

## PARTIES

5.      Plaintiff Sierra Club is a non-profit organization incorporated in California with its headquarters in Oakland, California.  Its mission is to protect and preserve the natural and human environment.  After Hurricane Katrina, many of Sierra Club's members became ill from formaldehyde emissions in trailers supplied by the Federal Emergency Management Agency ("FEMA") as temporary housing for people whose homes had been destroyed.  Sierra Club arranged for testing of many of the trailers and found alarmingly high emissions.  It provided this information to FEMA and advocated for FEMA to conduct testing and to relocate people living in the trailers.  In addition to testing FEMA trailers, Sierra Club disseminated information to its members and communities about harm from formaldehyde emissions in the trailers and about

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                    - 3 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

ways to reduce their risks.  It devoted organizational resources to performing functions that the government should be, but was not performing.  It conducted extensive advocacy to compel the government to protect people from formaldehyde emissions from wood products.  This advocacy included petitioning EPA to adopt limits on formaldehyde emissions from composite wood products and submitting numerous comments to EPA in support of the proposals to adopt such standards.

6.    The Sierra Club files this lawsuit on behalf of itself and its members. The Sierra Club has more than 829,000 members nationwide, including many thousands of members who are particularly susceptible to harm from formaldehyde emissions and who live in areas recently impacted by natural disasters.

7.    Plaintiff A Community Voice-Louisiana ("ACV") is a non-profit community organization dedicated to fighting for social and economic justice for low to moderate income families in southern Louisiana.  The organization conducts training sessions, runs campaigns, and undertakes other outreach efforts to assist its members and raise broader public awareness about the concerns of southern Louisiana's lower income families.  ACV has been actively engaged in helping lower income neighborhoods in the area recover from the impacts of Hurricane Katrina and avoid further threats to their health and well-being.  Many of ACV's members were housed in FEMA trailers in the wake of the storm and were exposed to elevated levels of formaldehyde.

8.    ACV files this lawsuit on behalf of itself and its members.  ACV has many members who have young children, are elderly, have previously been exposed to elevated levels of formaldehyde, and have respiratory ailments and therefore are particularly susceptible to

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                        - 4 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

exposure to additional formaldehyde emissions.  ACV's members also all live in an area that still is struggling to rebuild after Hurricane Katrina.

9.      Plaintiffs' members include people who are sensitive to formaldehyde exposures because of past harm to their health from formaldehyde exposures, existing health conditions like asthma, or being in vulnerable populations like children and the elderly.  Plaintiffs' members who live in areas impacted by natural disasters will be exposed to construction, rebuilding, and new furnishings that contain composite wood products.  Plaintiffs' members include people who live in housing, work in buildings, or whose children attend day care or school in buildings that are having repairs or new construction or new furnishings using composite wood products.

10.     If EPA had required compliance with limits on formaldehyde emissions from composite wood products in accordance with the Formaldehyde Act, newly manufactured or imported composite wood products would need to comply with the emissions standards by December 12, 2017.  While finished goods could use wood products manufactured prior to December 12, 2017, the existing stocks of wood products with higher formaldehyde emissions would be fixed and start to be depleted.

11.     Plaintiffs' members depend on this regulation being in place to protect themselves and their families from formaldehyde emissions above the EPA standards in their homes, workplaces, schools, and day cares.  Plaintiffs' members do not control which composite wood products will be used in construction, rebuilding, furnishings, and cabinetry to which they are exposed.  They do not receive notice that wood products with higher emissions have been used or installed in their rental housing, their workplaces, or where their children go to school or day care.

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                    - 5 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

12.     Delaying compliance with the Formaldehyde Rule beyond the timeline allowed by Congress has injured and continues to injure both the Sierra Club and A Community Voice and their members.  Granting the requested relief would redress these injuries by stopping the manufacture and import of wood products with higher emissions and fixing and starting the depletion of the supply of wood products used in finished goods and other products in widespread distribution.

13.     Defendant Scott Pruitt is the Administrator of the United States Environmental Protection Agency, the federal agency charged with issuing regulations to implement the Formaldehyde Act and that is constrained by the Act's mandatory provisions and limitations on that authority.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant the 28 U.S.C. § 1331(federal question jurisdiction).  Venue is proper because Sierra Club is incorporated in California and has its principal place of business in this district.  28 U.S.C. § 1391(e)(1).

## BACKGROUND

I.      THE HEALTH RISKS OF FORMALDEHYDE AND THE HARMFUL EXPOSURES EXPERIENCED BY PEOPLE HOUSED IN EMERGENCY TRAILERS AFTER HURRICANE KATRINA.

15.     Formaldehyde is a colorless, flammable gas at room temperature with a strong odor.

16.     Formaldehyde is classified as a known human carcinogen by the National Toxicology Program based on evidence in animal and human studies.  It is known to cause cancer in the upper respiratory tract, specifically nasopharyngeal cancer.  The National Toxicology Program and the National Research Council have identified formaldehyde as causing

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                          - 6 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

myeloid leukemia, and the International Agency for Research on Cancer conducted an assessment concluding that formaldehyde causes leukemia.

17.     Formaldehyde is a sensory irritant.  Eye, nose, and throat irritations, even from formaldehyde exposures of relatively short duration, have been documented in a range of epidemiology and human studies.

18.     Formaldehyde exposure is associated with a range of respiratory effects.  It can irritate the respiratory tract, decrease pulmonary function, increase the risk of asthma and allergic conditions, especially in children, and increase the severity of childhood asthma attacks.

19.     Epidemiology studies document an association between formaldehyde exposure and adverse reproductive outcomes in women, including reduced fertility.

20.     Formaldehyde is produced on a large scale worldwide.  One major use includes the production of wood binding adhesives and resins used in the manufacture of composite wood products (*i.e.*, hardwood plywood, medium-density fiberboard, and particleboard).  Composite wood products are widely used in paneling, flooring, cabinets, furniture, countertops, molding, and door skins.

21.     The hazards of formaldehyde emissions from composite wood products came to the fore when people displaced by Hurricane Katrina and other disasters were housed in trailers provided by the FEMA.  Many of the occupants of the FEMA trailers experienced nosebleeds, headaches, eye and skin irritation, and other ailments.  Testing by the Centers for Disease Control ("CDC") documented higher levels of formaldehyde than are typical indoors in the United States.  Because of serious health concerns, most of the displaced people were eventually moved out of the FEMA trailers, although the trailers continue to be used as housing in other parts of the country.

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                    - 7 -

22.     In 1992, the California Air Resources Board ("CARB") designated formaldehyde as a toxic air contaminant with no safe level of exposure. This designation requires CARB to take action to reduce human exposure to this toxic air contaminant.  Spurred by the FEMA trailers debacle, CARB initiated a formal rulemaking in which it found that formaldehyde is a respiratory irritant and carcinogen and that one of the major sources of exposure is from inhalation of formaldehyde emitted from composite wood products containing urea-formaldehyde resins.

23.     In 2008, California adopted an Airborne Toxics Control Measure ("ATCM") to reduce formaldehyde emissions from hardwood plywood, particleboard, and medium-density fiberboard and finished goods (such as cabinets and furniture) made with composite wood products.  It phased in the new emissions standards, requiring compliance between July 1, 2009 and July 1, 2012, depending on the particular wood product.  Manufacturers must demonstrate compliance with the standards through emissions tests and quality control processes certified by a third-party certifier.  17 Cal. Code Reg. §§ 93120-93120.12.  CARB estimated that its emission standards would reduce formaldehyde exposures in California by 58% by 2013 and would reduce childhood cancers by 9-26 and lifetime cancer cases by 35-97 per million. https://www.arb.ca.gov/toxics/compwood/factsheet.pdf.

24.     In 2008, the Sierra Club, joined by 25 other organizations and about 5,000 individuals, petitioned EPA to adopt the CARB standards under TSCA.  EPA declined to adopt the CARB standards because it did not have sufficient information to make the stringent findings then required under TSCA to regulate exposure to chemicals.  73 Fed. Reg. 36504 (June 27, 2008).  EPA initiated a proceeding to begin gathering information that could provide the basis for adopting and even going beyond he CARB standards.  *Id*.

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF          - 8 -

1

2

II.    THE 2010 LAW DIRECTING EPA TO ADOPT FORMALDEHYDE EMISSIONS
STANDARDS FOR COMPOSITE WOOD PRODUCTS ON AN EXPEDITIOUS
BASIS.

3

4

5

25.    Congress enacted the Formaldehyde Act in 2010 to establish national limits on

6

formaldehyde emissions from composite wood products because of the chemical's known

7

adverse effects on human health and its wide use in a variety of consumer products made of

composite wood such as cabinetry and household furnishings.  S. Rep. No. 111-169, at 1 (2010)

8

*see also* H. R. Rep. No. 111-509, pt. 1, at 7-8 (2010).

9

10

26.    The Act directs EPA to adopt formaldehyde emissions standards for hardwood

11

plywood, particleboard, and medium-density fiberboard manufactured, sold, or imported into the

12

United States that must be equivalent to the standards in the CARB Airborne Toxic Control

13

Measure.  15 U.S.C. § 2697(b)(1).  The Act leaves EPA no discretion to change those standards

14

and requires EPA to adopt implementing regulations that would ensure expeditious compliance

15

with them.

16

27.    The Act directs EPA to determine based on all available and relevant information

17

to determine whether to exempt engineered veneer and laminated products from the term

18

19

"hardwood plywood," subject to the emissions standards, *id.* § 2697(a)(3)(C)(I), and to include

20

various provisions in the implementing regulations, such as labeling, chain-of-custody

21

requirements, sell-through provisions, third-party testing and certification, and recordkeeping

22

requirements.  *Id.* § 2697(d)(2).

23

28.    The Formaldehyde Act directs EPA to finalize emission standards by January 1,

24

25

2013, *id.* § 2697(d)(1), and to ensure that, within 180 days after promulgation, those standards

26

"shall apply to hardwood plywood, medium-density fiberboard, and particleboard sold, supplied,

27

28

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                              - 9 -

1    offered for sale, or manufactured in the United States," except for an applicable sell-through

2    regulation.  *Id*. § 2697(b)(1).

3          29.     The EPA Administrator may adopt sell-through regulations governing composite

4    wood products and finished goods that contain regulated composite wood products, including

5    recreational vehicles, manufactured homes, and modular homes.  Such regulations can provide

6    that any inventory of such products or finished goods are not subject to the emissions standards if

7    they are manufactured before a specified date of manufacture, rather than based on the date of

8    sale.  *Id.* § 2697(d)(3)(A).  Sell-through regulations must prohibit the stockpiling of inventory to

9    be sold after the date of manufacturing.  *Id*. § 2697(d)(3)(B).  Stockpiling is defined as the

10   manufacture or purchase of a composite wood product or finished good between July 7, 2010

11   and 180 days after promulgation of the regulations that is greater than the rate prior to July 7,

12   2010.  *Id*. § 2697(d)(3)(C).

13         30.     Under TSCA, the term "manufacture" includes import.  *Id.* § 2602(9).  The

14   Formaldehyde Act directs EPA, in coordination with the Commissioner of the U.S. Customs and

15   Border Protection to revise regulations related to imported products as necessary to ensure

16   compliance with the Act no later than July 1, 2013.  *Id.* § 2697(b)(4).

17         31.     Congress set tight timelines for compliance because the regulated industry had

18   represented that a significant portion of the domestic industry is complying with the California

19   standards.  H. R. Rep. No. 111-509, pt. 1, at 15 (2010); Cong. Budget Office, Cost Estimate of S.

20   1660 Formaldehyde Standards for Composite Wood Products Act (January 7, 2010),

21   https://www.cbo.gov/publication/41906.  Congress sought to eliminate the competitive

22   advantage that foreign suppliers not subject to the California standards had in the market and

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                        - 10 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

prevent lower-cost imports with high formaldehyde emissions.  H. R. Rep. No. 111-509, pt. 1, at

7-9, 14-15; 156 Cong. Rec. H4704 (daily ed. June 23, 2010) (statement of Rep. Matsui).

III.    PROMULGATION OF THE FORMALDEHYDE RULE ESTABLISHING
        FORMALDEHYDE EMISSION STANDARDS AND THIRD-PARTY
        CERTIFICATION.

        32.     In June 2013, EPA proposed two rules.  One of the rules proposed formaldehyde

emissions standards and implementing measures.  78 Fed. Reg. 34820 (June 10, 2013).  The

other proposed a framework for the third-party certification program.  78 Fed. Reg. 34796 (June

10, 2013).

        33.     On July 27, 2016, EPA signed the Formaldehyde Rule combining and finalizing

both of the proposed rules.  EPA issued a press release in which the EPA Assistant Administrator

for the Office of Chemical Safety and Pollution Prevention heralded issuance of the final rule to

protect the public from exposure to formaldehyde, stating:

> We are carrying out important measures laid out by Congress to protect the public from
> harmful exposures of this widely used chemical found in homes and workplaces. . . .The
> new rule will level the playing field for domestic manufacturers who have a high rate of
> compliance with the California standard and will ensure that imported products not
> subject to California's requirements will meet the new standard and thus, not contain
> dangerous formaldehyde vapors.

EPA News Release, EPA Issues Final Rule to Protect the Public from Exposure to Formaldehyde:

Agency Implements Congressionally Enacted Formaldehyde Emission Standards (July 27, 2016)

(available at https://www.epa.gov/newsreleases/epa-issues-final-rule-protect-public-exposure-

formaldehyde).

        34.     The Formaldehyde Rule codifies the California standards as directed by the 2010

Formaldehyde Act.  EPA decided not to exempt various wood veneer laminated products in

which wood veneer is glued to the composite wood products that are subject to the emissions

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                            - 11 -

standards.  The rule also established testing, certification, recordkeeping, and other implementing mechanisms.

35.    The Formaldehyde Rule signed in July 2016 specified an effective date of 60 days after publication of the rule in the Federal Register and a compliance deadline for the composite wood product emissions standards of one year after publication.  Compliance with import certification requirements would be required two years after publication and laminated wood products would be required to comply with the emissions standards seven years after publication.

36.    Even though the Formaldehyde Rule was signed in July 2016, it was not published in the Federal Register until December 12, 2016.  As published, it had an effective date of February 10, 2016, and required compliance with the emission standards for composite wood products by December 12, 2017.  81. Fed. Reg. 89674 (Dec. 12, 2016.)

IV.    VARIOUS MANEUVERS TO DELAY THE FORMALDEHYDE RULE.

37.    On inauguration day, the newly installed President directed agencies to freeze regulations that had been published in the Federal Register, but had not yet gone into effect. Following that directive, EPA issued an omnibus final rule delaying the effective dates of 30 listed regulations until March 21, 2017.  82 Fed. Reg. 8499 (Jan. 26, 2017).  The table listing the rules included the Formaldehyde Rule.  *Id*. at 8500.  EPA did not comply with notice-and-comment rulemaking requirements in issuing this rule delaying the effective dates.

38.    On March 20, 2017, EPA published another final rule delaying the effective dates of a series of rules, including the Formaldehyde Rule, for another 60 days until May 22, 2017. 82 Fed. Reg. 14324 (Mar. 20, 2017).  EPA again sidestepped notice-and-comment rulemaking procedures in issuing this second delay rule.

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                          - 12 -

39.     EPA issued no further rules delaying the Formaldehyde Rule's effective date, and the rule went into effect on May 22, 2017.

40.     With the Formaldehyde Rule in effect, EPA turned its attention to delaying the compliance deadlines.  On May 24, 2017, EPA published both a direct final rule and a proposed rule proposing to extend the Formaldehyde Rule's compliance deadlines by an amount of time equal to the delay in the effective date of the Formaldehyde Rule, a delay of a little more than three months.  82 Fed. Reg. 23735 (May 24, 2017); 82 Fed. Reg. 23769 (May 24, 2017).  The direct final and proposed rules justified this delay to allow regulated entities time to establish business relationships, reduce compliance burdens, and prevent disruptions in the supply chain.

41.     EPA pursued a direct final rule because it believed the extension of the compliance deadlines would be noncontroversial and would generate no adverse comments.  After EPA received adverse comments, EPA withdrew the direct final rule.

42.     Some importers of wood products urged EPA to extend the compliance deadlines beyond the proposed three months.  *See* Comments of International Wood Products Association (represents importers of wood and wood products), available at https://www.regulations.gov/document?D=EPA-HQ-OPPT-2017-0244-0011; Furniture Values International, LLC (furniture importer), available at https://www.regulations.gov/document?D=EPA-HQ-OPPT-2017-0244-0005.

43.     On September 25, 2017, EPA published the Formaldehyde Delay Rule delaying the compliance deadlines in the Formaldehyde Rule.  82 Fed. Reg. 44533 (Sept. 25, 2017).  EPA delayed some of the compliance deadlines by a period of time commensurate with the amount of time the Formaldehyde Rule's effective date had been delayed, a period of slightly more than three months.  For one set of deadlines, however, it went further.  EPA delayed all of the

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                    - 13 -

compliance deadlines associated with the formaldehyde emissions standards for hardwood plywood, particleboard, and medium-density fiberboard for an entire year beyond the December 12, 2017 compliance deadline in the Formaldehyde Rule.  The Formaldehyde Delay Rule reiterated EPA's desire to reduce compliance burdens, provide regulatory flexibility to regulated entities, and prevent disruptions in the supply chain.  *Id*. at 44533.  It called the new compliance deadlines "a balanced and reasonable timeline" and stated that it "believes extending this compliance date reflects Congressional intent under TSCA Title VI that the agency implement provisions to ensure compliance with the formaldehyde emissions standards as soon as possible while enabling regulated entities to achieve compliance."  *Id*. at 44534.  EPA never mentioned the Formaldehyde Act's direction to require compliance within 180 days of promulgating the Formaldehyde Rule.

44.     EPA stated that it does not believe the delay would result in any significant increases in health risk because a majority of wood products conform to the CARB standards. *Id.* at 44534-35.  Even though both Congress and EPA have long estimated high compliance rates among domestic manufacturers, EPA never assessed the risks posed by the non-CARB compliant wood products, which had been the motivation for the direction in the Formaldehyde Act.

## CAUSE OF ACTION

45.     Both the Formaldehyde Rule and the Formaldehyde Delay Rule are final agency actions within the meaning of the Administrative Procedure Act.  5 U.S.C. §704.

46.     EPA promulgated the Formaldehyde Rule when it published the rule in the Federal Register on December 12, 2016.  The Formaldehyde Rule codified the emissions standards mandated in the Formaldehyde Act, 15 U.S.C. § 2697(b)(2).

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                         - 14 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

47.     Pursuant to 15 U.S.C. § 2697(b)(1), EPA had a legal duty to ensure that "effective beginning on the date that is 180 days after the date of promulgation . . ., the emissions standards described in paragraph (2) shall apply to hardwood plywood, medium-density fiberboard, and particleboard sold, supplied, offered for sale, or manufactured in the United States."

48.     In promulgating the Formaldehyde Delay Rule, EPA never addressed the mandates in 15 U.S.C. § 2697(b)(1) to make the emissions standards "effective beginning on the date that is 180 days after the date of promulgation" for hardwood plywood, medium-density fiberboard, and particleboard sold, supplied, offered for sale, or manufactured in the United States.  EPA stated that it "believes extending this compliance date reflects Congressional intent under TSCA Title VI that the agency implement provisions to ensure compliance with the formaldehyde emissions standards as soon as possible while enabling regulated entities to achieve compliance."  82 Fed. Reg. 44534.  This belief and rationale for the Formaldehyde Delay Rule runs directly contrary to the direction in the Formaldehyde Act, 15 U.S.C. § 2697(b)(1).

49.     By delaying the compliance dates for the designated emissions standards until December 12, 2018, EPA exceeded its authority under 15 U.S.C. § 2697(b)(1), in violation of 5 U.S.C. § 706(2)(C), which makes it unlawful for agencies to take actions "in excess of their statutory jurisdiction, authority, or limitations, or short of statutory right."

50.     By delaying the compliance dates for the designated emissions standards until December 12, 2018, EPA acted arbitrarily, capriciously, and contrary to the Formaldehyde Act, 15 U.S.C. § 2697(b)(1), in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

**REQUEST FOR RELIEF**

Plaintiffs respectfully request that this Court grant the following relief:

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                          - 15 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.      Declare that EPA exceeded and violated limitations on its statutory authority as set out in the Formaldehyde Act, 15 U.S.C. § 2697(b)(1), by delaying the compliance deadlines for emissions standards for hardwood plywood, medium-density fiberboard, and particleboard sold, supplied, offered for sale, imported, or manufactured in the United States beyond 180 days of promulgation of the Formaldehyde Rule.

2.      Declare that EPA acted arbitrarily, capriciously, and contrary to 15 U.S.C. § 2697(b)(1) by delaying the compliance deadlines for emission standards for hardwood plywood, medium-density fiberboard, and particleboard sold, supplied, offered for sale, imported, or manufactured in the United States beyond 180 days of promulgation of the Formaldehyde Rule.

3.      Declare that the Formaldehyde Delay Rule violates the Formaldehyde Act, 15 U.S.C. § 2697(b)(1), and exceeds EPA's statutory authority under that Act and is unlawful.

4.      Vacate and set aside the Formaldehyde Delay Rule, except for the provisions in 15 C.F.R. § 770.2(b)-(d), 15 C.F.R. § 770.7(d)(1), and 15 C.F.R. § 770.15(e) applying to third-party certification, and in 15 C.F.R. § 770.2(e)(2)-(3) subjecting laminated products to the formaldehyde emissions limits.

5.      Award plaintiffs their attorneys' fees and costs.

6.      Grant such additional relief as the Court deems just and proper.


DATED this 31st day of October, 2017.

                                        Respectfully submitted,


                                        /s/ Patti A. Goldman
                                        PATTI A. GOLDMAN (WSBA # 24426)
                                        *[Pro Hac Vice Admission Pending]*
                                        ASHLEY N. BENNETT (DCBA# 1044215)
                                         *[Pro Hac Vice Admission Pending]*


COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                          - 16 -

Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
Ph: (206) 343-7340 | Fax: (206) 343-1526
pgoldman@earthjustice.org
abennett@earthjustice.org

MONEEN S. NASMITH (NYSBA# 442704)
*[Pro Hac Vice Admission Pending]*
Earthjustice
48 Wall St., Floor 19
New York, NY 10005
Ph: (212) 845-7376
mnasmith@earthjustice.org

STACEY P. GEIS (CSBA# 181444)
Earthjustice
50 California, Suite 500
San Francisco, CA  94111
Ph: (415) 217-2000 | Fax: (415) 217-2040
sgeis@earthjustice.org

*Attorneys for Plaintiffs Sierra Club and A Community*
*Voice-Louisiana*

COMPLAINT FOR DECLARATORY
AND VACATUR RELIEF                    - 17 -